# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON  DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | Case No. 1:20CR00047 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **JERADA HENDERSON,** | ) | By:  James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Daniel J. Murphy, Assistant United States Attorney, Abingdon, Virginia, for United States; John T. Stanford, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

The defendant, charged with firearms and drug trafficking offenses, has moved to suppress any evidence obtained from two cell phones on the ground that the search warrant permitting the seizure of the cell phones lacked probable cause for its issuance.  The parties are agreed that the court may decide the motion based solely upon the contents of the affidavit submitted to the state judge by a law enforcement officer.  The motion has been fully briefed and is ripe for decision.

I.

Investigator Carol Smith of the Smyth County, Virginia, Sheriff's Office obtained a search warrant on October 10, 2018, from a state circuit judge to search certain residential premises located in Saltville, Virginia.  In support of the application for the warrant, Investigator Smith submitted a written affidavit.  In the

affidavit, Smith sworn that she had been an investigator for the Sheriff's Office for five years and had comprehensive training in narcotic investigations, as well as lengthy experience in such investigations.  She related that she had been engaged in the investigation of two persons — Ashley Langley and Andrea Chandler —  for drug dealing.  Earlier that day, those persons had been the subject of a vehicle stop by police, during which methamphetamine, a firearm, digital scales, and baggies for drug distribution had been found.  Both suspects told police that the out-of-state supplier of the methamphetamine was currently sleeping at Langley's residence and was armed with a firearm.  Smith stated that based on her "training, experience, and conversations with other law enforcement officers," Gov't's Resp. Attachment C, Smith Aff. ¶ 6, ECF No. 71-1, that drug dealers "typically maintain methamphetaine, methamphetaine distribution paraphernalia (small, plastic, Ziploc-type baggies, ditital scales, etc.) notes, records, messages, and telephone numbers (pertaining to methamphetamine trafficking related contacts/co-conspirators/customers), and other items as listed and explained on Attachment B (of the Application and Affidavit for Search Warrant to which this affidvait is attached)." *Id.*  Attachment B  contained a list of items, which included "cellular telephones/smartphones," as well as other electronic devices, in which the other listed evidence "may be stored." Gov't's Resp. Attachment B  ¶ 9, ECF No. 71-1.

The search warrant was directed to Langley's residence.  It was excuted a few hours later.  Two cell phones were seized during the search, and the defendant claims that they belonged to him.[1]  The defendant contends that the affidavit for the warrant failed to provide the judge with probable cause "to believe that such evidence would be at the home or that it would contain evdeince of illegal activity if it did."  Mot. to Suppress 5, ECF No. 70.

II.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  Essentially, the Fourth Amendment requires that warrants:  (1) Be issued by a neutral, detached judicial officer; (2) contain a particularized description of the place to be searched and persons or things to be seized; (3) be supported by oath or affirmation; and (4) be based on probable cause.  *United States v. Clyburn*, 24 F.3d 613, 617 (4th Cir. 1994).

An affidavit must provide the judicial officer with a substantial basis for determining the existence of probable cause.  *Illinois v. Gates*, 462 U.S. 213, 239

---

[1]  The government does not contend that the defendant's privacy interests were not violated by the search on the ground that that he was a drug business visitor to the premises. *See United States v. Gray*, 491 F.3d 138, 145 (4th Cir. 2007) ("The Fourth Amendment's protections do not attach to every visitor.").

(1983); *see also Maryland v. Pringle*, 540 U.S. 366, 371 (2003).  Although there is

not a precise definition of probable cause, courts have understood that "it exists

where the known facts and circumstances are sufficient to warrant a [person] of

reasonable prudence in the belief that contraband or evidence of a crime will be

found in a particular place."  *United States v. Perez*, 393 F.3d 457, 461 (4th Cir.

2004).[2]  Therefore, courts must consider a number of factors in a practical manner,

"including the veracity and basis of knowledge of persons supplying hearsay

information."  *Gates*, 462 U.S. at 238.  Ultimately, great deference should be given

to the issuing judicial officer's determination finding probable cause.  *Spinelli v.*

*United States*, 393 U.S. 410, 419 (1969).  The Fourth Amendment has a strong

preference for searches conducted pursuant to a warrant, and thus the Supreme Court

has held it is inconsistent to invalidate a warrant by "interpreting affidavit[s] in a

hypertechnical, rather than a commonsense, manner."  *United States v. Ventresca*,

380 U.S. 102, 109 (1965).

The defendant relies on *United States v. Griffith*, 867 F.3d 1265 (D.C. Cir.

2017). In *Griffith*, the police obtained a warrant to search the defendant's home in

connection with an investigation of a homicide committed more than a year earlier,

for which police believed the defendant had been the getaway driver.  For much of

---

[2]  I have omitted internal quotation marks, alterations, and citations throughout this opinion, unless otherwise noted.

the year, the defendant had been incarcerated on unrelated charges. Finding that the affidavit supporting the search warrant "provided virtually no reason to suspect that [the defendant] in fact owned a cell phone, let alone that any phone belonging to him and containing incriminating evidence would be found in the residence[,]" the court concluded that the warrant was not supported by probable cause and was unduly broad. *Id.* at 1270–71. While the affidavit stated that, in the affiant's experience, gang members " 'maintain regular contact with each other" and "often stay advised and share intelligence about their activities through cell phones and other electronic communication devices [,]' " the court concluded that this did not establish probable cause because more than a year had elapsed since the homicide. *Id.* at 1274 ("That assessment might have added force if officers had been investigating a more recent crime.").

The defendant's cell phones, in comparison, were not plainly unrelated to the alleged crimes and the search warrant was obtained and executed the same day of the vehicle stop of Langley and Chandler. *See United States v. Eggerson*, 999 F.3d 1121, 1125–27 (8th Cir. 2021) (rejecting *Griffith* on the ground that the warrant was obtained on the same day as the suspected crime).

I do not find the affidavit deficient. The state circuit judge reasonably could have found that based on the facts set forth there was probable cause that cells phones may be located in the residence and contain evidence of drug trafficking. In addition

to Investigator Smith's explanation based on her extensive experience concerning drug trafficking, it is well known that cell phones are "now so widespread as to be ubiquitous," particularly as "tools of the trade" of drug dealers. *Eggerson,* 999 F.3d at 1125.

### III.

Although "[t]he Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands," *United States v. Leon*, 468 U.S. 897, 906 (1984), the Supreme Court adopted the exclusionary rule "to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *United States v. Calandra*, 414 U.S. 338, 347 (1974). In *Leon*, the Supreme Court established the good-faith exception to the exclusionary rule. The Supreme Court found that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." 468 U.S. at 918.

The *Leon* Court further noted that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Id.* at 922. The *Leon* Court observed that while searches authorized by a warrant "will rarely require any deep inquiry into reasonableness, for a warrant

issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search . . . it is clear that in some circumstances the officer will have no reasonable grounds for believing the warrant was properly issued." *Id.* at 922–23.

The Court identified four circumstances in which the good-faith exception would not apply: (1) "[I]f the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) if "the issuing magistrate wholly abandoned his judicial role"; (3) if the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) if under the circumstances of the case the warrant is "so facially deficient" that the executing officers "cannot reasonably presume it to be valid." *Id.* at 923. Consideration of the *Leon* exception "is a less demanding showing than the substantial basis threshold required to prove the existence of probable cause in the first place." *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002). The Supreme Court has consistently explained that the exclusionary rule's "sole purpose . . . is to deter future Fourth Amendment violations" and that exclusion is appropriate only when "the deterrence benefits of suppression . . . outweigh its heavy costs." *Davis v. United States*, 564 U.S. 229, 236–37 (2011).

The *Davis* Court clarified that the key to this balancing analysis is the relative culpability of the officer's conduct:

> The basic insight of the *Leon* line of cases is that the deterrence benefits of exclusion vary with the culpability of the law enforcement conduct at issue. When the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. But when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way.

*Id.* at 238 (emphasis added).

Even if I were to assume that the affidavit in this case lacked a showing of probable cause to search for and seize the cell phones, I find that the officers who executed the search warrant would have had a good faith belief in its validity. The fact that the warrant was obtained promptly, that cells phones are often involved in drug trafficking, and that there is no evidence that Investigator Smith misled the judicial officer, support that determination.

IV.

For the foregoing reasons, it is **ORDERED** that the Motion to Suppress, ECF No. 70, is DENIED.

ENTER:   August 17, 2021

/s/  JAMES P. JONES
United States District Judge