# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:20CR00047 |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **JERADA HENDERSON,** ) | JUDGE JAMES P. JONES |
| ) | |
| Defendant. ) | |

*Daniel J. Murphy, Assistant United States Attorney, Abingdon, Virginia, for United States; Erin Trodden, Assistant Federal Public Defender, Harrisonburg, Virginia, for Defendant.*

In this Opinion and Order, the court resolves objections by the defendant to his guideline sentencing range and sets forth the court's legal analysis and findings of fact on the issues raised.

## I. BACKGROUND.

The defendant, Jerada Henderson, was convicted by a jury of conspiring to distribute or possess with the intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count Two), and knowingly possessing with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count Three). The jury acquitted the defendant of Count One (possession of a firearm by

a convicted felon) and Count Four (possession of a firearm in furtherance of a drug trafficking crime).

In a Presentence Investigation Report (PSR) prepared by a probation officer in advance of the defendant's sentencing, it was recommended that there be attributed to the defendant between 9.144518 and 9.172868 kilograms of "Ice" methamphetamine, resulting in a Base Offense Level of 38. PSR ¶¶ 22, 29; U.S. Sent'g Guidelines Manual (USSG) § 2D1.1(a)(5), (c)(1) (2021). In addition, it was recommended that an enhancement of two levels be applied for possession of a firearm, *id*. § 2D1.1(b)(1), for a Total Offense Level of 40, PSR ¶¶ 30, 37. With a Criminal History Category of IV, the defendant's advisory sentencing range was calculated at 360 months to life imprisonment. PSR ¶ 75. There is a statutory mandatory minimum sentence of 10 years' imprisonment based on the jury's verdict determining the quantity of methamphetamine to be more than 50 grams. 21 U.S.C. § 841(b)(1)(A).

The defendant has filed objections to the PSR's calculation of the advisory sentencing range. The objections are to (1) the drug weight attributed to the defendant; (2) the use of the higher Ice guideline; and (3) the application of the two-level enhancement for possession of a firearm. A hearing has been held on these objections. The evidence relevant to the objections is that contained in the PSR, presented at trial, or at the hearing.

## II. Drug Quantity.

In its task of determining drug quantity at sentencing in a drug trafficking case, the court must consider whether the government has established the quantity by a preponderance of the evidence. *United States v. Cook*, 76 F.3d 596, 604 (4th Cir. 1996). If the defendant objects to the quantity of drugs recommended in the PSR, the court must make an independent resolution of the factual issues raised by the objection by stating its findings or by expressly adopting the findings in the PSR. *United States v. Williams*, 152 F.3d 294, 300–01 (4th Cir. 1998). "The defendant has an affirmative duty to make a showing that the information in the presentence report is unreliable, and articulate the reasons why the facts contained therein are untrue or inaccurate." *United States v. Powell,* 650 F.3d 388, 394 (4th Cir. 2011) (internal quotation marks and citation omitted).

In the case of jointly undertaken criminal activity, a defendant's Base Offense Level may be determined on the basis of all of the reasonably foreseeable acts of other persons in furtherance of the jointly undertaken criminal activity. USSG § 1B1.3(a)(1)(B). In the context of a drug trafficking conspiracy, this means that a defendant's drug quantity may be determined on the basis of drugs distributed or possessed by coconspirators in furtherance of the conspiracy. *United States v. Bell*, 667 F.3d 431, 442 (4th Cir. 2011). What matters under the sentencing guidelines is the "total amount of drugs in circulation that a defendant was aware of or were

reasonably foreseeable." *United States v. Williamson*, 953 F.3d 264, 272 (4th Cir.), *cert. denied,* 141 S. Ct. 638 (2020).

In calculating drug amounts, the court may consider any relevant information, provided that the information has sufficient indicia of reliability to support its probable accuracy. *See United States v. Uwaeme*, 975 F.2d 1016, 1021 (4th Cir. 1992). Even uncorroborated hearsay can provide sufficiently reliable evidence of drug quantity. *Williamson*, 953 F.3d at 273.

"Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." USSG § 2D1.1 cmt. n.5. Importantly, however, "[d]istrict courts must still exercise caution in estimating drug quantity at sentencing, and not attribute speculative or scantily supported amounts to defendants." *Williamson*, 953 F.3d at 273.

The essence of the defendant's objection to the PSR's calculation of the drug quantity attributable to him is that it should not include amounts distributed by others and that any evidence connecting such amounts to the defendant should be disbelieved by the court as unreliable. It is thus contended that the maximum amount that should be attributed to the defendant falls within the Base Offense Level of 32 rather than 38.

The evidence shows that on October 10, 2018, a vehicle that had been rented by the defendant and was being driven by Ashley Langley, and also occupied by David Ingle and another person, was stopped by police and was found to contain methamphetamine packaged in baggies, as well as unused baggies, digital scales, and a pistol. Langley admitted to police that she and her passengers were in the process of selling the methamphetamine, which totaled 57.276 grams in Ice form by later laboratory analysis.

Langley testified at trial for the government and stated that she had sold approximately one kilogram of methamphetamine per week from the end of June or beginning of July of 2018 up until the day of the police vehicle stop, when she had been arrested. Trial Tr., 176–77, ECF No. 142. She related that the defendant had arrived at her mobile home in Saltville, Virginia, from Georgia the night before the police stop, bringing more methamphetamine for her to sell. *Id.* at 147–48. She also testified that when he arrived, he had a pistol in his waistband. *Id.* at 156–57. Messages to and from Langley seized from the defendant's cell phone corroborated his travel that day to her home in Virginia.

Police obtained a search warrant for Langley's home immediately after the vehicle stop. Upon execution of the warrant later that day, the defendant was found alone at the home. An agent recovered a duffle bag that contained credit cards and documents in the defendant's name, as well as a holster that fit a pistol found in the

home.  Also discovered were dealer quantities of Ice methamphetamine, consisting of 435.192 grams by laboratory analysis.

In calculating the advisory sentencing guidelines recommended in the defendant's PSR, the probation officer considered the quantity of drugs found in the defendant's rental vehicle and the quantity found in Langley's home, together with Langley's estimate of the quantity sold by her, to arrive at the total amount to be attributed to the defendant.[1]

The defendant objects to the inclusion of any amounts other than the quantities found in the defendant's vehicle or in Langley's home.  The defendant first contends that the evidence shows that no methamphetamine sold by Langley came from the defendant before that which he delivered to her on October 10, shortly before she was arrested.  For that assertion, the defendant cites the testimony of the case agent at trial that the only transaction he knew about between Langley and the defendant was that which occurred on the day of the search warrant.  Tr. 38, ECF No. 143. The defendant also refers to Langley's trial testimony, in which she testified that she had initially received methamphetamine to sell from the defendant's brother, Homer

---

[1] 57.276 grams (vehicle) plus 435.192 grams (home) plus 8.65205 kilograms (sold by Langley) equals 9.144518 kilograms, the low end of the PSR's estimate.  PSR ¶¶ 6, 8, 29.  Base Offense Level 38 includes 4.5 kilograms or more of Ice methamphetamine. USSG § 2D1.1(c)(1).

"Bub" Henderson, and "eventually" received drugs from the defendant on the morning she got arrested. Tr. 128, 132–33, ECF No. 142.

While Langley answered leading questions by government counsel at trial that might be construed to mean that the defendant had provided her with drugs to sell prior to his October 2018 visit, I find as a fact — keeping in mind the government's burden of proof — that she had not received any such drugs from the defendant until that visit.

Next, the defendant argues that the earlier distribution of drugs by Langley was not part of his own agreed participation in the conspiracy.

The evidence shows that Langley started selling for Bub Henderson in the summer of 2018. She would pick up the methamphetamine at David Ingle's home, and it was Ingle who initially introduced her to "some guys" coming to supply him, who were the Henderson brothers and their cousin, Jackson. *Id*. at 126–27. Langley testified that she had seen the defendant sell drugs from Ingle's home. *Id*. at 135. Other statements made to law enforcement officers related in the PSR connect the defendant to the drug dealing of Bub Henderson and Jackson, including statements from Toni Johnson, Ashley Firestone, David Sexton, and David Ingle. PSR ¶¶ 14–20, ECF No. 150.

In the case of jointly undertaken criminal conduct, the quantity of drugs may be relevant conduct so long as it is "within the scope" of the activity agreed to by

the parties. USSG § 1B1.3(a).  In determining whether specific conduct was within the scope of such activity, courts have considered  "(1) the existence of a single scheme; (2) similarities in modus operandi; (3) coordination of activities among schemers; (4) pooling of resources or profits; (5) knowledge of the scope of the scheme; and (6) length and degree of the defendant's participation in the scheme." *United States v. Donadeo*, 910 F.3d 886, 895 (6th Cir. 2018) (citation omitted); s*ee also United States v. Salem*, 657 F.3d 560, 564 (7th Cir. 2011) (adopting same factors).  These factors support the inclusion of Langley's prior sales of methamphetamine that she had obtained from Bub Henderson.

First, the scheme and the modus operandi for operating it were the same throughout.  Methamphetamine was transported by the three wholesalers – the two Henderson brothers and cousin Jackson – from Georgia to the same area of rural Southwest Virginia and in turn distributed by various street sellers.  While there is no evidence as to the pooling of money, the drugs were normally cut and prepared for sale at David Ingle's home.  The evidence shows that the defendant was a participant with his relatives from Georgia in executing this scheme.  The fact that he had not earlier actually provided drugs to Langley does not preclude the attribution of those earlier quantities to him.

While the defendant cites evidence from text messages that the defendant and his brother Bub had fallen out a few days before the defendant's visit, and thus

explains why he came directly to Langley's home on this trip, that does not limit the attribution of amounts earlier distributed by Langley before that dispute. The question is whether the record supports a finding that Langley's prior distribution was conduct within the scope of the defendant's jointly undertaken criminal activity. For the reasons stated, I find that it does. Moreover, based on the defendant's close connection with the overall scheme, I find that it has been shown by a preponderance of the evidence that he would have reasonably known that street sellers like Langley would have been selling such quantities.

Finally, the defendant attacks the reliability of the testimony of the participants who provided evidence or statements to the government that are quoted in the PSR. While I have considered the alleged inconsistencies,[2] they do not convince me that I should reject the central allegations of these persons. It is natural that such persons may views events differently or are not entirely consistent themselves in relating those events. These persons are likely addicts themselves and may have had a motive to assist the government. At their core, however, the testimony and statements are consistent in correctly determining the relevant issues presented to the court.

---

[2] The defendant cites to statements made to law enforcement and provided to the defendant in discovery, but which statements are not part of the present record. Nevertheless, I will accept for present purposes the correctness of the representations made by defense counsel as to these statements.

### III.   APPLICATION OF ICE GUIDELINE.

The defendant alternatively contends that because no tests or other reliable evidence supports the Ice purity of the methamphetamine earlier distributed by Ashley Langley, that amount should be scored as a mixture of methamphetamine rather than as Ice. *See United States v. Williams*, 19 F.4th 374, 380 (4th Cir. 2021) (holding that evidence of drug's Ice purity must be sufficiently reliable and specific), *cert. denied*, 142 S. Ct. 1392 (2022). I agree with this objection and find that the appropriate Base Offense Level is 34, as suggested by the defendant.[3]

### IV.   FIREARM ENHANCEMENT.

The final objection to the advisory guideline range is that the court should not apply the two-level enhancement for possession of a firearm, as provided for in USSG § 2D1.1(b)(1). However, I find for the reasons set forth by the probation officer in her response in the PSR, that the objection should be denied. In particular, I credit Ashely Langley's testimony that the defendant appeared at her home to deliver the drugs while possessing a pistol, which evidence is corroborated by the discovery of a pistol the next day in her home that fit the gun holster found in a duffle bag along with the defendant's documents.

---

[3] The defendant also contends that the court should not apply the Ice guideline on policy grounds as to any of drugs attributed to him. I have previously considered this argument and rejected it. *United States v. Farris*, 421 F. Supp. 3d 321, 329–30 (W.D. Va. 2019), *aff'd sub nom. United States v. Williams,* 19 F.4th 374 (4th Cir. 2021), *cert. denied*, 142 S. Ct. 1392 (2022).

V.  CONCLUSION.

For the foregoing reasons, the defendant's objections to the calculation of the advisory guidelines sentencing range are GRANTED IN PART AND DENIED IN PART.  The correct advisory guideline scoring applicable to the defendant's sentence is a Total Offense Level of 36, with a Criminal History of IV, resulting in an incarceration range of 262 to 327 months.[4]  The Clerk shall schedule a reconvened sentencing hearing.

It is so **ORDERED**.

ENTER:  July 19, 2022

/s/  JAMES P. JONES
Senior United States District Judge

---

[4] The defendant also argues for a variance below the guideline range based in part on the leniency received by his coconspirator Langley.  I reserve decision on that request until the reconvened sentencing hearing.